THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PARENTS INVOLVED IN COMMUNITY SCHOOLS, a Washington nonprofit corporation,<br><br>                 Plaintiff,<br><br>vs.<br><br>SEATTLE SCHOOL DISTRICT NO. 1, a political subdivision of the State of Washington, et al.,<br><br>                 Defendants. | NO.  CV00-1205BJR<br><br>DEFENDANTS' RESPONSE TO MOTION FOR ENTRY OF JUDGMENT AND CROSS-MOTION FOR DISMISSAL<br><br>PLAINTIFF'S MOTION NOTED FOR:  January 30, 2007<br><br>CROSS MOTION NOTED FOR: February 1, 2007 |

## I.   CROSS MOTION

As shown below, plaintiff Parents Involved in Community Schools ("PICS") is not entitled to entry of judgment in the form requested, nor is it entitled to any form of judicial remedy because: (1) the case is moot under the voluntary cessation doctrine; and (2) if not moot, plaintiff is unable to make the requisite showings necessary to obtain any form of prospective relief.   For these reasons, defendants respectfully move the Court for entry of a judgment of dismissal pursuant to Rule 56.

\\

\\

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
1700 Seventh Avenue, Suite  1900
Seattle, Washington  98101
T: (206) 622-5511  F: (206) 622-8986

1

## II.    BACKGROUND & SUMMARY

2

This matter is on remand from the United States Supreme Court, which held (by a 5-4

3

vote) that the Seattle School District's ("the District") use of race as a tiebreaker to determine

4

certain student assignments during the 2000-2001 school years failed the narrow tailoring

5

6

prong of strict scrutiny. *Parents Involved in Community Schools v. Seattle School District No.*

7

*1*, 551 U.S. ___, 127 S.Ct. 2738, 2759-61 (plurality opinion), and 127 S.Ct. at 2791 (Kennedy,

8

J., concurring in part) (2007); *Parents Involved in Community Schools v. Seattle School Dist.,*

9

*No. 1*, 498 F.3d 1059 (9th Cir. 2007) (order remanding for further proceedings).   The issue

10

before the Court at this time is whether the plaintiff is entitled to any form of relief that would

11

support an award of attorneys' fees under 42 U.S.C. § 1988.

12

13

Plaintiff has previously filed a $1.8 million fee request in the Ninth Circuit, which

14

denied that request on the basis that "it is not yet entitled to fees," citing *Hyland v. Wonder*, 117

15

F.3d 405, 416-17 (9th Cir. 1997) ("[I]t is premature to award attorney fees, because Hyland

16

cannot be designated a prevailing party until all issues have been resolved and he has obtained

17

some relief on the merits of his claims that benefits him directly") and *Coral Const. Co. v. King*

18

*County*, 941 F.2d 910, 933 (9th Cir. 1991) ("As a general rule, a party who obtains the reversal

19

of judgment on appeal is not a 'prevailing party' unless such reversal also resulted in entry of

20

judgment for that party"). Order of Oct. 22, 2007 (No. 01-35450).

21

22

The prospect of a fee award is not sufficient to justify the relief requested by PICS.

23

*Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480-81, 110 S.Ct. 1249 (1990). Before it is

24

entitled to fees, PICS must obtain judicial relief in the form of a final order that materially

25

alters the relationship between its members and the District by modifying the District's

26

1  behavior, and which provides a direct benefit the plaintiff. *Martinez v. Wilson*, 32 F.3d 1415,

2  1422 (9th Cir. 1994) (*citing Farrar v. Hobby,* 506 U.S. 103 (1992). Here, plaintiff is unable to

3  demonstrate how any form of judicial relief is likely to change the defendants' behavior in any

4  material fashion or that the proposed judgment would provide any direct benefit to its

5  members. In these circumstances, as the Supreme Court has pointedly stated:

6

7  > [W]here on the face of the record it appears that the only concrete interest in the
   > controversy has terminated, reasonable caution is needed to be sure that mooted
8  > litigation is not pressed forward, and unnecessary judicial pronouncements on
   > even constitutional issues obtained, solely in order to obtain reimbursement of
9  > sunk costs.

10  *Lewis v. Continental Bank Corp.*, 494 U.S. at 480-481.

11  Plaintiff's complaint, filed in 2000 and not amended since, seeks declaratory and

12  injunctive relief with respect to the use of race as a tiebreaker in high school assignments. Dkt.

13  no. 1) p. 5:18-25. The integration tiebreaker has not been used since the 2001-2002 assignment

14

15  cycle, which concluded in spring 2001, however. *Parents Involved in Community Schools v.*

16  *Seattle School Dist. No. 1*, 377 F.3d 949, 958 (9th Cir. 2004). For this reason, and because all of

17  the children of PICS members who were previously identified as adversely impacted by the

18  integration tiebreaker had advanced beyond the ninth grade, the District argued before the

19  Supreme Court that the case had become moot. 127 S.Ct. at 2750-51. The Court rejected this

20  argument, because "the district vigorously defends the constitutionality of its race-based

21  program, and nowhere suggests that if this litigation is resolved in its favor it will not resume

22

23  using race to assign students." *Id.* at 2751. Accordingly, based on application of the voluntary

24  cessation doctrine, the Court concluded that the case was not moot. *Id.*

25

26

DEFENDANTS' RESPONSE TO MOTION
FOR ENTRY OF JUDGMENT, ETC. - Page 3
NO. CV00-1205BJR

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1    This is not the end of the matter, however, because the Court has specifically said that

2    the conclusion that a live case or controversy exists at the time of Supreme Court review does

3    not preclude a later finding of mootness. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455

4    U.S. 283, 289, n.12 (1982) (rejecting claim that matter was moot at time of Supreme Court

5    review, but stating that: "it is still open to appellees to show, on remand, that the likelihood of

6    further violations is sufficiently remote to make injunctive relief unnecessary. This is a matter

7    

8    for the trial judge") (citations omitted).

9    Subsequent to the Supreme Court's decision, the School Board (whose composition is

10   entirely different than when the challenged plan was adopted) formally repealed the integration

11   tiebreaker. Declaration of Board President Cheryl Chow ("Chow Decl."), Ex. 1. Furthermore,

12   

13   under a new superintendent and guided by the Supreme Court's decision, the District has

14   undertaken a comprehensive review of the student assignment plan, with the intention of

15   presenting an entirely new plan to the School Board for adoption  by the end of the 2007-2008

16   academic year.[1]

17   PICS insists, nonetheless, that it is entitled to declaratory and injunctive relief simply

18   based upon the Supreme Court's reversal.  It is well established, however, that "'[p]ast

19   exposure to illegal conduct'" cannot support a claim for prospective relief. *City of Los Angeles*

20   

21   v. *Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea* v. *Littleton*, 414 U.S. 488, 495-496 (1974)).

22   Rather, " 'continuing, present adverse effects' " must be shown. *Id.*  In this regard, Plaintiff

23   does not suggest, let alone make an evidentiary showing, that the Defendants are currently

24   

---

25   [1] The District's planning centers on using attendance zones to determine high school enrollment, whereby every student will be able to be assigned to one school, where most assignments will be determined by residence within
26   the school's attendance zone, with the remaining seats reserved for students who live outside of the attendance zone. Chow decl. at ¶ 3.

DEFENDANTS' RESPONSE TO MOTION
FOR ENTRY OF JUDGMENT, ETC. - Page 4
NO. CV00-1205BJR

1   acting in a manner that is inconsistent with the holding of the Supreme Court, or that they are
2   likely to do so in the future.

3       In these circumstances, defendants submit that relief must be denied for two
4   independent reasons: (1) the case is moot under the voluntary cessation doctrine. *See Smith v.*
5
6   *University of Washington Law School*, 233 F.3d 1188, 1194 (9th Cir. 2000) (voluntary cessation
7   renders a case moot when there is no reasonable expectation that the alleged violation will
8   recur and interim events "have completely and irrevocably eradicated the effects of the alleged
9   violation"); and (2) Plaintiff cannot make the showings required in order to obtain either
10  declaratory or injunctive relief. *See Allis-Chalmers Corp. v. Arnold*, 619 F.2d 44, 46-47 (9th
11  Cir. 1980) ("[A]lthough a court's power to grant injunctive relief survives the discontinuance of
12
13  the illegal conduct, the moving party must satisfy the court that relief is needed. The necessary
14  determination is that there exists some cognizable danger of recurrent violation, something
15  more than the mere possibility which serves to keep the case alive"); *Golden v. Zwickler*, 394
16  U.S. 103, 108, 89 S.Ct. 956 (1969) (requirements for declaratory judgment must exist on
17  remand). Accordingly, even if it is not technically moot, the case should be dismissed because
18  plaintiff cannot establish entitlement to any relief.

19                        **III.    The Supreme Court Decision**
20
21  **A.    Procedural Posture**

22      This Court granted summary judgment to the District and denied summary judgment to
23  PICS, based on the 2000-2001 plan (15% trigger, thermostat). *Parents Involved in Community*
24  *Schools v. Seattle Sch. Dist. No 1*, 137 F.Supp.2d 1224 (W.D. Wa. 2001). The Court expressly
25  declined to issue a declaratory judgment on the validity of the plan in force during 1999-2001
26

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1    (10% trigger, no thermostat). *Id.* at 1239, n.12. The Supreme Court reversed the judgment of

2    the Court of Appeals (and this Court) and directed that the case be "remanded for further

3    proceedings." 127 S.Ct. at 2768. It did not instruct that any relief be awarded, however.

4    **B.    The Scope of the Court's Decision**

5

6    Although the Justices' five separate opinions, totaling 185 pages, express a wide variety

7    of views on Equal Protection doctrine and the use of race as a factor in school assignments, the

8    decision to reverse turns on narrow grounds specific to the 2000-2001 plan: *i.e.,* "the minimal

9    impact of the district's racial classifications on school enrollment casts doubt on the necessity

10   of using racial classifications" and "[t]he districts have also failed to show that they considered

11   methods other than explicit racial classifications to achieve their stated goals." 127 S.Ct. at

12   2743 (plurality opinion). Justice Kennedy provided the fifth vote for reversal by concurring in

13   Part III-C of the Chief Justice's opinion, stating: "because I agree that in the context of these

14   plans, the small number of assignments affected suggests that the schools could have achieved

15   their stated ends through different means." *Id.* at 2793 (Kennedy, J, concurring in part).[2]

17   Professor James Ryan explained the Court's holding as follows:

18       The Court applied strict scrutiny and held that the plans at issue were not
19       narrowly tailored because neither school district had shown that classifying
         individual students by race was needed to achieve integrated schools. Relatively
20       few students in Seattle and Jefferson County were affected by the consideration of
         race, which suggested to the Court that relying on race was unnecessary. The
21

22   [2] Earlier in his opinion, Justice Kennedy provided an even narrower basis for his concurrence:

23       The district, nevertheless, has failed to make an adequate showing in at least one respect. It has
         failed to explain why, in a district composed of a diversity of races, with fewer than half of the
24       students classified as "white," it has employed the crude racial categories of "white" and "non-
         white" as the basis for student assignments. *** Other problems are evident in Seattle's system,
25       but there is no need to address them now.

26   127 S.Ct. at 2791.

DEFENDANTS' RESPONSE TO MOTION
FOR ENTRY OF JUDGMENT, ETC. - Page 6
NO. CV00-1205BJR

1   Court also believed that neither district gave sufficient consideration to whether
2   race-neutral measures would suffice. That's it. That's all the Court decided.

3   James E. Ryan, *The Supreme Court and Voluntary Integration,* 121 Harv. L. Rev. 131, 135

4   (2007).

5       Contrary to plaintiff's contentions, the Court did not bar all consideration of race or hold

6   that there is no compelling interest in achieving integrated, racially diverse schools. Although

7   portions of the Chief Justice's opinion (Parts III-B and IV) argue that all plans designed to

8   achieve "racial balancing" in schools (meaning school demographics resembling the

9   community as a whole (127 S.Ct. at 2757-58)) are invalid, the Chief Justice's opinion

10  ultimately concluded: "The debate is not one we need to resolve, however, because it is clear

11  

12  that the racial classifications employed by the districts are not narrowly tailored to the goal of

13  achieving the educational and social benefits asserted to flow from racial diversity." 127 S.Ct.

14  at 2755. Moreover, Justice Kennedy refused to join those parts (*Id.* at 2788), stating, "[these]

15  parts of the opinion by THE CHIEF JUSTICE imply an all-too-unyielding insistence that race

16  cannot be a factor in instances when, in my view, it may be taken into account." (*Id.* at 2791).

17  Instead, he wrote:

18  

19      This Nation has a moral and ethical obligation to fulfill its historic commitment to
        creating an integrated society that ensures equal opportunity for all of its children.
20      A compelling interest exists in avoiding racial isolation, an interest that a school
        district, in its discretion and expertise, may choose to pursue. Likewise, a district
21      may consider it a compelling interest to achieve a diverse student population.
        Race may be one component of that diversity, but other demographic factors, plus
22      special talents and needs, should also be considered.

23  *Id.* at 2797.

24  

25      Thus, Justice Kennedy would permit the pursuit of these interests through measures that

26  are facially race-neutral, such as drawing of attendance zones, school site selection, resource

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

allocation and the like.  Further, if these kinds of measures prove inadequate, Justice Kennedy

would permit overt consideration of race, "informed by *Grutter* [*v. Bollinger*]."  *Id.* at 2793.[3]

And, inasmuch as plaintiff seems to concede that Justice Kennedy's opinion states the

controlling rationale under *Marks v. United States,* 430 U.S. 188 (1977)[4] (Motion at 4), it is

apparent that Court's decision did not impose a blanket constitutional prohibition on

consideration of race in school assignments.   Indeed, it can fairly be said that a majority of the

Court recognized a compelling interest in achieving or maintaining racially diverse schools.

## IV.   ARGUMENT

### A.   Plaintiff is not Entitled to the Relief Requested

Plaintiff requests entry of a judgment declaring that the 2000-2001 assignment plan

"violated" the Fourteenth Amendment and Title VI and further stating that "The District can

have no compelling interest in achieving in its high schools either (a) diversity based solely on

race or ethnicity or (b) a predetermined demographic balance between white and non-white

students."   Plaintiff further proposes that the Court permanently enjoin not only the former

plan, but "any substantially similar modification thereof or any other plan, policy, or device by

which individual students are classified systematically or 'typed' according to race and

assigned to high schools solely on the basis of race, unless it shall have been demonstrated to

---

[3] The dissenters would clearly have no problem with such measures, and the Chief Justice's opinion pointedly did not take a position with respect to them.  127 S.Ct. at 2766.

[4] "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds."   *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal citation and quotations omitted); *see also Smith v. University of Washington Law School*, 233 F.3d at 1200 (holding that Justice Powell's opinion in *Regents of the Univ. of Cal. v. Bakke,* 438 U.S. 265 (1978) stated the controlling rationale under *Marks*).

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1   the Court that such race-based assignments are necessary as a last resort to achieve a

2   compelling interest of the District."

3   Issuance of either a declaratory judgment or an injunction is discretionary. *Wilton v.*

4   *Seven Falls Co.*, 515 U.S. 277, 282, 115 S.Ct. 2137 (1995) (declaratory judgment); *eBay Inc. v.*

5

6   *MercExchange, LLC*, --- U.S. ---, 126 S.Ct. 1837, 1839 (2006). As shown below, plaintiff is not

7   entitled to a declaratory judgment or an injunction because there is no need for it.  Further, to

8   the extent that plaintiff seeks to preclude plans not yet developed, let alone litigated, it invites

9   the Court to abuse its discretion by upsetting the proper allocation of functions between the

10  local school board and the federal judiciary. *See Dayton Bd. of Ed. v. Brinkman,* 433 U.S. 406,

11  410, 97 S.Ct. 2766 (1977). Plaintiff's argument that this relief is mandated by the judgment of

12  the Supreme Court is severely mistaken.  Nothing in Rule 58 compels this conclusion, and the

13  cases cited by plaintiff to support it are inapposite. In both *Podbersky v. Kirwin,* 38 F.3d 147

14  (1994), and *Alpine Christian Fellowship*, 870 F.Supp. 991 (D. Colo. 1994), the challenged

15

16  practices were ongoing at the time of the judicial decision invalidating them., Further, insofar

17  as the opinions reveal, no suggestion of mootness was offered nor was it argued that relief was

18  unnecessary.  In addition, in *Podbersky* (unlike this case), the court of appeals had specifically

19  directed the district court to enter judgment for the plaintiff on remand. 38 F.3d at 162.  Here,

20  the plaintiff must make a showing of entitlement and need for the requested relief and, even

21  then, the Court retains considerable discretion with respect to whether to issue such relief.

22

23  **B.   Declaratory Relief**

24  At the outset, it is useful to focus on several fundamentals governing the issuance of

25  declaratory relief.  First, a declaratory judgment is a form of anticipatory relief that may be

26

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite  1900
Seattle, Washington  98101
T: (206) 622-5511  F: (206) 622-8986

1   provided in cases of an "actual controversy that has not reached a stage at which either party

2   may seek a coercive remedy." *Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir.

3   1996).   Important to this case is the proposition that a "declaratory judgment without the

4   possibility of prospective effect would be superfluous." *McQuillion v. Schwarzenegger*, 369

5   F.3d 1091, 1095 (9th Cir. 2004). Thus, a declaration of unconstitutionality that does not serve

6

7   some forward-looking purpose is improper.    *Smith v. University of Washington Law*

8   *School,* 233 F.3d at 1195.

9          Second, district courts possess substantial discretion in determining whether to issue a

10  declaratory relief, even when the suit otherwise satisfies jurisdictional requirements. *Wilton v.*

11  *Seven Falls Co.*, 515 U.S. at 282; *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220,

12  1222-23 (9th Cir. 1998). In exercising this discretion, district courts must consider:

13

14          whether the declaratory action will settle all aspects of the controversy; whether
            the declaratory action will serve a useful purpose in clarifying the legal relations
15          at issue; whether the declaratory action is being sought merely for the purposes of
            procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a
16          declaratory action will result in entanglement between the federal and state court
            systems.
17

18  *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2004).

19          In cases of public import, the issues "must have taken on fixed and final shape so that a

20  court can see what legal issues it is deciding, what effect its decision will have on the

21  adversaries, and some useful purpose to be achieved in deciding them." *Public Service*

22  *Commission of Utah v. Wycoff Co., Inc.,* 344 U.S. 237, 243-44, 73 S.Ct. 236 (1952).   In such

23  cases, "sound discretion withholds the remedy where it appears that a challenged continuing

24  practice is, at the moment adjudication is sought, undergoing significant modification so that its

25  ultimate form cannot be confidently predicted." *A.L. Mechling Barge Lines, Inc. v. U.S.,* 368

26

LAW OFFICES
BENNETT BIGELOW & LEEDOM, P.S.
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1   U.S. 324, 331, 82 S.Ct. 337 (1961) (internal quotes omitted).[5]  Finally, where there has been an

2   appeal, entitlement to declaratory relief must be established based on conditions as they exist

3   on remand. *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956 (1969).

4        Application of these fundamentals to the facts of this case leads to the obvious

5   conclusion that the requested form of declaratory judgment is inappropriate. First, the primary

6   component of the proposed judgment is purely retrospective, consisting simply of a declaration

7   that the old plan was illegal. The second component of the proposed judgment (that the District

8   has failed to show that use of race is necessary as a last resort) must be treated as merely

9   subsidiary to the first portion, because this Court has not been asked to pass upon any future

10  plan. Finally, the third component of the proposed declaratory judgment—that the District has

11  not articulated a compelling interest—is not only inconsistent with the Court's decision on that

12  question, but also appears to be a pre-emptive strike against any future showings of compelling

13

14  necessity.[6]

15

16        In short, use of a declaratory judgment for purely retrospective purposes is improper.

17  And, where the District is in the midst of designing a new assignment plan to be consistent with

18  the Supreme Court's pronouncements, any declaration concerning the permissible contours of

19  that plan would be premature and likely unnecessary. *A.L. Mechling Barge Lines, Inc. v. U.S.,*

20

21

22  [5] With respect to any future assignment plans, the concept of ripeness also applies. Under that rubric, "[a] claim is
    fit for decision if the issues raised are primarily legal, do not require further factual development, and the

23  challenged action is final." *Buono v. Kempthorne*, 502 F.3d 1069, 1079 (9th Cir. 2007) *quoting Exxon Corp. v.
    Heinze,* 32 F.3d 1399, 1404 (9th Cir.1994). At least two, and arguably all of three, of these conditions are absent

24  here.

25  [6] In this regard, the comments of Judge Posner, writing in *Wittmer v. Peters*, 87 F.3d 916, 919 (7th Cir. 1996) are
    apt: "A judge would be unreasonable to conclude that no other consideration except a history of discrimination

26  could ever warrant a discriminatory measure unless every other consideration had been presented to and rejected
    by him."

DEFENDANTS' RESPONSE TO MOTION
FOR ENTRY OF JUDGMENT, ETC. - Page 11
NO. CV00-1205BJR

368 U.S. at 331.[7] Unless and until this Court has an adequately developed record concerning a new plan before it —including data about the conditions existing at the time the plan was adopted and impact of that plan—it is not possible to properly apply the narrow tailoring criteria that were applied by the Supreme Court, which focus on whether the conditions existing at the time necessitate the use of the race and whether there are race-neutral alternatives available.

**C.     Injunctive Relief**

**1.     Plaintiff cannot show an immediate threat of constitutional injury**

The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion. *eBay Inc. v. MercExchange, L.L.C.*, 126 S.Ct. at 1839. Although a court's power to grant injunctive relief survives the discontinuance of the illegal conduct, the moving party must still satisfy the court that relief is required. *Allis-Chalmers Corp. v. Arnold*, 619 F.2d 44, 46-47 (9th Cir. 1980). Even in cases where there has been a previous violation of rights, "a key prerequisite for equitable relief," is a showing of "a likelihood of substantial and immediate irreparable injury." *Lyons*, 461 U.S. at 111. "The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Allis-Chalmers Corp.*, 619 F.2d at 46-47; *see also Connecticut v. Massachusetts*, 282 U.S. 660, 674, 51 S.Ct. 286 (1931) (an injunction "will not be granted against something merely feared as liable to occur at some indefinite time in the future"). An

---

[7] The authorities cited by plaintiff do not alter this conclusion, because in each case the action at issue was ongoing at the time the judgment was issued. *See Kitzmiller v. Dover Area School Dist.*, 400 F.Supp.2d 707, 755-56 (M.D.Pa.2005); *Alpine Christian Fellowship v. Cty. Comm'rs*, 870 F.Supp. 991 (D. Colo. 1994); *Burnham v. Oswald*, 342 F.Supp. 880, 887-88 (W.D.N.Y. 1972).

DEFENDANTS' RESPONSE TO MOTION
FOR ENTRY OF JUDGMENT, ETC. - Page 12
NO. CV00-1205BJR

injunction cannot be used for "punishment or reparations for ... past violations." *United States v. Oregon State Med. Soc'y,* 343 U.S. 326, 333, 72 S.Ct. 690 (1952). The prospect of harm must be "immediate." *Easyriders Freedom F.I.G.H.T. v. Hanigan,* 92 F.3d 1486, 1495 (9th Cir. 1996).

Applying these standards, the Ninth Circuit in *Scott v. Pasadena Unified School Dist.,* 306 F.3d 646, 659 (9th Cir. 2002), refused to entertain a challenge to the future use of a race or gender-weighted lottery system for determining school assignments, because of the plaintiff's "failure to establish a genuine threat of enforcement on the basis of which this court could evaluate the policy's constitutionality." Similarly, *Belk v. Charlotte-Mecklenburg Bd. of Educ.,* 269 F.3d 305 (4th Cir. 2001), vacated an injunction issued against future unspecified race-conscious school assignment policies. The district court had the injunction because the school board continued to assert that diversity was a compelling interest that could support the use of race in student assignments, but was not currently using race and had no concrete plans to do so in the future. In these circumstances, the Court of Appeals held that it was error to issue the injunction against any future race-conscious plans. *Id.* at 346-347.

These cases demonstrate that plaintiff cannot establish entitlement to an injunction in this case. First, the District has not used the tiebreaker since 2001 and, now that the Supreme Court has ruled on the matter, there is not the slightest indication that it will ever do so again. Second, with respect to any future assignment plans, the record is devoid of any evidence showing a likelihood of imminent constitutional harm to any of plaintiff's members. To the contrary, the District is developing a new assignment plan and will be guided by the Supreme Court's decision as it does so.

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1

## 2.    Speculation about future plans is insufficient

2    Plaintiff argues that the District has a "propensity to push the envelope" with regard to

3    race conscious policies, and cites *United States v. Laerdal Mfg.*, 73 F.3d 852 (9th Cir. 1995) for

4    the proposition that past illegal conduct gives rise to an inference that future violations may

5    occur, thereby justifying an injunction. Motion at 10:15-16.  In the way in which it used by

6    plaintiff, *Laerdal* is inconsistent with *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir.

7    1999) (*en banc*) and *Lyons v. City of Los Angeles*, both of which hold that prior exposure to

8    illegal conduct is an insufficient basis for prospective relief.   Furthermore, *Laerdal* is

9    distinguishable in this context because it involved a manufacturer's repeated non-compliance

10    with existing federal regulations governing medical devices, which led the district court to

11    doubt the credibility of its statements that it would comply in the future. As recognized in *Smith*

12

13    *v. University of Washington Law School*, however, *Laerdal* is inapplicable in cases involving

14    public officials, whose good faith must be presumed, particularly where the governing law is

15    unclear or in flux.  *See Smith,* 233 F.3d at 1195.[8]

16

17    \\

18    \\

19

20

---

[8] In much the same way that the *Smith* plaintiffs suggested that law school officials would try to find ways around Initiative 200, plaintiff here suggests that, because the District continues to believe that diversity is an important and constitutionally valid interest, it will renew its former practices. Motion at 10:1-11.  Plaintiff's argument misses the mark, for two reasons: first, as demonstrated above, the Court did not hold that racial diversity in schools is not a compelling interest.  Indeed, five justices agreed that it is. Second, plaintiff's argument is based upon a stitched-together series of out-of-context comments by former District officials concerning the former policy, which have no bearing on the sincerity of the District's commitment to abide by the Supreme Court's decision.  In this regard, *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 347 (4th Cir. 2001) rejected a similar argument, holding that it was an abuse of discretion to base an injunction on a school district's assertion that diversity is a compelling interest, stating: "it was improper for the district court to base its injunction on CMS's unsuccessful defense of the policy. At this point, we can discern nothing in the record indicating that CMS will ignore the district court order and continue to use race in an unconstitutional manner."

DEFENDANTS' RESPONSE TO MOTION
FOR ENTRY OF JUDGMENT, ETC. - Page 14
NO. CV00-1205BJR

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

### 3.    "Obey the law" injunctions are improper

Plaintiff further argues that it is necessary to prohibit any modified or new plan that may run afoul of the Supreme Court's decision or, more precisely, plaintiff's characterization of that decision.  There are a number of problems with this approach.  First, injunctions that purport to simply require the defendant to "obey the law" are improper, particularly where the law itself is unsettled. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999); *Epstein v. Family Partnership v. Kmart Corp.*, 13 F.3d 762 (3rd Cir. 1994); *Beatty to United States*, 191 F.2d 317 (8th Cir. 1951); *City of Moses Lake v. United States,* 416 F.Supp.2d 1015, 1027 (E.D. WA. 2005).

Second, Rule 65 requires that injunctions specifically describe the acts prohibited or required; therefore, an injunction must contain "an operative command capable of enforcement." *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64, 73-74, 88 S.Ct. 201 (1967).    As the Supreme Court has further explained:

> [T]he specificity provisions of Rule 65(d) are no mere technical requirements.  The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.

*Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713 (1974).[9]

For the same reasons, an injunction that purports to require compliance with a prior judicial decision is also invalid.  *Meltzer v. Board of Public Instruction of Orange County,*

---

[9] An order directing that defendants are prohibited from enforcing a current or former policy is insufficiently specific under this standard. *Schmidt v. Lessard,* 414 U.S. at 476 (1974).  Likewise, injunctions that purport to enjoin wrongful acts as alleged in a complaint are invalid. *See Hartford-Empire Co. v. U.S.,* 65 S.Ct. 373, 386, 323 U.S. 386 (1945) (injunction against acts alleged in complaint invalid); *Los Angeles Trust Deed & Mortgage Exchange v. SEC,* 264 F.2d 199 (9th Cir.1959) (injunction that prescribed acts merely by reference to the complaint violates Rule 65(d)).

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1   *Florida*, 480 F.2d 552 (5th Cir.1973) (order requiring continued compliance with court's

2   rulings in a prior order violates Rule 65(d)); *B.H. Bunn Co. v. AAA Replacement Parts Co.*, 451

3   F.2d 1254, 1269 (5th Cir.1971) (injunction that broadly referred back to findings of fact did not

4   inform defendant of what he was forbidden to do).

5

6   Here, while plaintiff claims that its proposed injunction would merely require

7   compliance with the Supreme Court's judgment, the language suggested goes far beyond the

8   holding of the Supreme Court; *i.e.*, it rules out the concept of racial diversity as a compelling

9   interest, and then tells the District that it can only seek to use overtly racial means if it can

10  demonstrate to the Court that such means are necessary as a "last resort"[10] to support to some

11  other compelling interest. In this way, plaintiff seeks to use this Court's authority to pre-empt

12  measures that have not been and may never be implemented, and certainly have not been

13  litigated in this case.

14

15  **D.   The Case is Moot**

16           **1.           Supreme Court precedent permits this Court to revisit the mootness
                          issue**

17

18  Under Article III, § 2 of the Constitution, a "case" or "controversy" must exist at all

19  stages of the matter. *Arizonans for Official English* v. *Arizona*, 520 U.S. 43, 67 (1997).[11]

20

21  [10] The concept of "last resort" is not a literal one. *Grutter v. Bollinger,* 539 U.S. 306, 340, 123 S.Ct. 2325 (2003)
    upheld a race-conscious admissions plan against a claim that "race-neutral" measures would have achieved the
22  same result, stating that narrow tailoring did not require abandonment of selective measures that are a "cornerstone
    of its educational mission." Justice Kennedy's construct of the permissible direct use of race as a last resort must
23  include this concept, inasmuch as he indicated that analysis of the direct use of race in public school assignments
    should be "informed by *Grutter.*" 127 S.Ct. at 2793.

24  [11] *See also Native Village of Noatak v. Blatchford*, F.3d 1505, 1509 (9th Cir.1994) ("mootness is 'the doctrine of
    standing set in a time frame: [t]he requisite personal interest that must exist at the commencement of the litigation
25  (standing) must continue throughout its existence (mootness)'") *quoting United State Parole Comm'n v. Geraghty*,
    445 U.S. 388, 397 100 S.Ct 1202, 63 L.Ed.2d 479 (1980).

26

DEFENDANTS' RESPONSE TO MOTION
FOR ENTRY OF JUDGMENT, ETC. - Page 16
NO. CV00-1205BJR

Accordingly, even after a Supreme Court holding that a case is not moot, the trial court may revisit the issue on remand. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. at 289 and n.10 ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur").

Here, the Supreme Court's decision on standing turned on: (1) whether there was a sufficient prospect of imminent injury; and (2) whether the Board's voluntary suspension of the racial tiebreaker during the appeal rendered the case moot. 127 S.Ct. at 2750-51. On the first issue, the Court assumed that the district would "maintain[] the current plan and reinstitute[] the racial tiebreaker," and therefore concluded that PICS's standing rested on a continuing injury to its members based on being "forced to compete for seats at certain high schools in a system that uses race as a deciding factor in many of its admissions decisions." *Id.* at 2750. On the second point, the Court held that the case was not moot, because the district was continuing to "vigorously defend" the integration tiebreaker, "and nowhere suggests that if this litigation is resolved in its favor it will not resume using race to assign students." 127 S.Ct. at 2751.

> **2.** **Changed circumstances demonstrate that there is no reasonable prospect of a recurring violation**

The factors upon which the Court based its standing decision have now changed, materially and permanently. First, it has always been the District's intention to abide by controlling judicial decisions. As long ago as 2002, after having been enjoined from using the integration tiebreaker just before assignment notices were to be transmitted, the District decided that it would suspend its use pending the outcome of this litigation. *See Parents Involved in Community Schools v. Seattle School Dist. No. 1,* 377 F.3d 949, 958 (9th Cir. 2004). Second, even before the Supreme Court issued its decision, changed circumstances caused the

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1  District to begin development of a new assignment policy that would not have included the

2  integration tiebreaker. Chow Decl. at ¶ 3. Following the appointment of a new superintendent

3  in summer 2007, that process has been re-targeted towards adoption of a new plan in spring

4  2008, to be implemented for the 2009-2010 school year. *Id.* at ¶ 5. Third, following the

5

6  Supreme Court decision, the school board formally repealed the integration tiebreaker. *Id.* at

7  ¶ 14.

8      None of these changes in practice was judicially mandated. Instead, it is evident that

9  the District is proceeding in good faith to develop a new assignment plan that will address

10  current circumstances in light of the Supreme Court's holdings, however fractured those

11  holdings may be. Thus, the appropriate analysis is, as the Court itself indicated, whether the

12  case is now moot under the voluntary cessation doctrine. *See also Chemical Producers &*

13  *Distributors Ass'n v. Helliker*, 463 F.3d 871 (9th Cir. 2006) (mootness questions resulting from

14

15  repeal or amendment of local ordinances analyzed under voluntary cessation standard).

16      Plaintiff suggests that voluntary cessation will never render a case moot. This

17  suggestion is incorrect. Voluntary cessation of a challenged practice will render a matter moot,

18  however, where: (1) there is no reasonable expectation that the alleged violation will recur, and

19  (2) interim events "have completely and irrevocably eradicated the effects of the alleged

20

21  violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379 (1979); *Smith v.*

22  *University of Washington Law School*, 233 F.3d at 1194. Here, the totality of the

23  circumstances clearly shows that this standard has been met.

24      As previously noted by this Court, by the time this litigation was commenced, the

25  District had already moved to reduce the use of race-based assignments. 137 F. Supp.2d at

26

DEFENDANTS' RESPONSE TO MOTION
FOR ENTRY OF JUDGMENT, ETC. - Page 18
NO. CV00-1205BJR

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986

1    1239.  Even before the Supreme Court's decision, it had signaled its intention to further curtail

2    or eliminate them.  And, although a temporary suspension pending the outcome of litigation

3    clearly did not satisfy the Supreme Court that the matter was moot,[12] after the decision the

4    school board formally repealed the challenged aspect of the plan.  Chow Decl. at ___.

5

6         The reluctance of courts to declare a matter moot based on voluntary cessation of

7    challenged activities is based on the concern that dismissal will leave the defendant "free to

8    return to his old ways."  *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894

9    (1953).  This concern is not operative here because the District has repealed the integration

10   tiebreaker and is working on a new plan that does not involve individual racial classifications.

11   The fact that cessation results from the obligation to abide by controlling law or a desire to

12   avoid liability is no obstacle to a mootness finding.  For example, the Court in *Davis* held that

13   a race discrimination challenge to a screening test for firefighters had become moot because the

14   County had abandoned it during the litigation.  440 U.S. at 633-34.  Because the plaintiffs

15   sought only prospective relief, and the new screening process was not shown to have a similar

16   discriminatory impact, the Court concluded that there were no ongoing effects of past

17   discrimination to be remedied.  *Id.*

18

19        Similarly, in *Enrico's Inc. v. Rice,* 730 F.2d 1250, 1253-54 (9th Cir. 1984), the plaintiff

20   brought an action under the Sherman Act, seeking declaratory and injunctive relief against

21   enforcement of a California liquor pricing regulation.  While the case was pending in federal

22   court, a California state court held the regulation invalid.  *Id.* at 1252.  The district court

23

24   _____

[12] *See Buono v. Kempthorne,* 502 F.3d 1069, 1079 (9th Cir. 2007) (characterizing Supreme Court's mootness
25   decision in *Parents* as turning on the temporary litigation-related nature of the suspension).

26

1    nevertheless issued a ruling, holding that the regulation was valid. *Id.* On appeal, the Ninth

2    Circuit held that the matter was moot because the California liquor authorities were obligated to

3    and had committed to abide by the state court's ruling, which had since become final. *Id.* at

4    1253-54. Accordingly, it dismissed the appeal and vacated the district's court's judgment,

5

6    directing instead that the matter be dismissed as moot. *Id.* at 1255.

7        Likewise, in *EEOC v. North Gibson School Corporation*, 266 F.3d 607, 611 (7th Cir.

8    2001), *overruled on other grounds by EEOC v. Waffle House, Inc.,* 534 U.S. 279, 122 S.Ct. 754

9    (2002), the Seventh Circuit held that the injunctive portion of an EEOC challenge to an early

10   retirement plan was moot, where the defendant school district had repealed the plan in response

11   to a district court decision invalidating a similar plan in a different school district. Affirming

12   dismissal on mootness grounds, the court stated:

13

14       [T]he district court correctly dismissed as moot any claim the EEOC brought for
         broad injunctive relief to enjoin the future use of a discriminatory early
15       retirement plan by NGSC.    The EEOC has not identified a currently
         discriminatory plan nor has the EEOC suggested that it has a reasonable
16       expectation that a discriminatory plan will be adopted by NGSC in the future.
     *Id.* at 621.
17

18       In *Smith v. University of Washington Law School*, the Ninth Circuit held that the

19   defendants' obligation to comply with a newly enacted state statute, which prohibited the same

20   race-conscious admission practices that the plaintiffs sought to enjoin under federal law, was

21   sufficient to moot all claims for prospective relief. 233 F.3d at 1194. Rejecting arguments that

22   the statute might be amended or that the defendants might disobey it, the Ninth Circuit first

23   noted that public officials are entitled to a presumption of good faith and the expectation that

24   they will comply with the law. *Id.* at 1195. It then concluded that, in light of defendants'

25

26   obligation to comply with the new law, "[t]here can be no real expectation that the alleged

DEFENDANTS' RESPONSE TO MOTION
FOR ENTRY OF JUDGMENT, ETC. - Page 20
NO. CV00-1205BJR

1   wrongs will recur." *Id.*   Specifically addressing a claim that the defendants might seek to

2   circumvent the statutory ban, the court said:

3
> Nor can we address Smith's fear of the *possibility* that the state's allegedly
4
> discriminatory policy will manifest itself under the new statute. Federal courts are not
> authorized to address such theoretical possibilities. *** If the Law School should be
5
> temerarious enough to decide to ignore the law of the State of Washington in the future,
> Smith, or others, can commence a new battle at that time."
6

7   *Id.* (internal citation and quotations omitted).

8       Another relevant factor that points towards mootness is that, since the integration

9   tiebreaker was last employed, the entire membership of the Seattle school board as well as the

10  District's Superintendent have changed.   Multiple courts have held that a case was moot after

11  the agency's administration changed.   It is well-established that to continue suit against a

12  successor--officials, "there must be some indication that they intend to continue the
13
    unconstitutional practices alleged in the complaint." *Tara Enterprises, Inc. v. Humble*, 622
14
15  F.2d 400, 401-02 (8th Cir.1980) *citing Mayor of Philadelphia v. Educational Equality League*,

16  415 U.S. 605, 622-23, 94 S.Ct. 1323, 1334-35 (1974).  Here, no such indication exists.  To the

17  contrary, the Board has repealed the challenged measure and is proceeding in accordance with

18  the Supreme Court's decision. Chow Decl. at ¶ 4.

19      In these circumstances, there is no realistic possibility that the District will reinstitute
20
    the former integration tiebreaker.   Because plaintiff only sought prospective relief,[13] and
21
22  because the tiebreaker has not been employed since 2001, there are no present effects of its past

23

24
---
[13]   This proposition applies equally to declaratory and injunctive relief. *See Smith v. University of Washington
25  Law School,* 233 F.3d at 1195 ("[T]here is no more reason to maintain a prospective declaratory relief class action
    to pass on the now abandoned policy than there is to issue an injunction against that policy.  The one claim is as
26  moot as the other.").

DEFENDANTS' RESPONSE TO MOTION
FOR ENTRY OF JUDGMENT, ETC. - Page 21
NO. CV00-1205BJR

1    use that can be remedied by an injunction.   Accordingly, the standards for dismissal on

2    mootness grounds under the voluntary cessation doctrine have been met.

3    ## V.   CONCLUSION

4    Entry of a judgment affording affirmative relief solely for the purpose of facilitating

5    plaintiff's claim for attorney fees would be improper.  Rather, plaintiff must show that relief is

6    necessary to protect the constitutional rights of its members.  This it has not done.  Recognizing

7

8    that it cannot show a likelihood of imminent harm, plaintiff would have the Court enter a

9    declaratory judgment that far exceeds the narrow and fact-based scope of the Supreme Court's

10   decision.  This Court should reject this request, not only because it is unnecessary in light of the

11   current state of affairs in Seattle's schools, but because the case is, in all events, moot under the

12
     voluntary cessation doctrine.  Rather, the appropriate step at this point would be to direct entry
13
     of a judgment of dismissal without prejudice.
14

15                       DATED this 15th day of January 2008.

16                       BENNETT BIGELOW & LEEDOM, P.S.

17                       By:    /s/ Michael Madden
                                Michael Madden  WSBA #8747
18                              Amy M. Magnano WSBA # 38384
                                Telephone:  (206) 622-5511
19                              Facsimile:  (206) 622-8986
                                Email:     mmadden@bbllaw.com
20
                         OFFICE OF THE GENERAL COUNSEL
21                       SEATTLE PUBLIC SCHOOLS
                                Shannon McMinimee WSBA #34471
22                              Assistant General Counsel
                                Telephone: (206)252-0110
23                              Email: smmcminimee@seattleschools.org

24                       Attorneys for Defendants

25

26

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite  1900
Seattle, Washington  98101
T: (206) 622-5511  F: (206) 622-8986

1

## CERTIFICATE OF SERVICE

2   I, hereby certify that on January 15, 2008, I electronically filed the above

3 DEFENDANTS' RESPONSE TO MOTION FOR ENTRY OF JUDGMENT, ETC. with the

4 Clerk of the Court using the CM/ECF System which will send notification of such filing to

5 counsel as follows: Harry J. Korrell, Davis Wright Tremaine, 1201 Third Avenue, Suite 2200,

6 Seattle, WA 98101-3045.

7             /s/ Michael Madden

8             Michael Madden, WSBA #8747
              Bennett Bigelow & Leedom, P.S.

9             1700 Seventh Avenue, Suite 1900
              Seattle, WA 98101

10            Telephone: (206) 622-5511
              Facsimile: (206) 622-8986

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' RESPONSE TO MOTION
FOR ENTRY OF JUDGMENT, ETC. - Page 23
NO. CV00-1205BJR

LAW OFFICES
**BENNETT BIGELOW & LEEDOM, P.S.**
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
T: (206) 622-5511  F: (206) 622-8986